# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
(Filed:  December 16, 2013)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | **PUBLISHED** |
| JOHN GERARD, | * | |
| | * | No. 08-786V |
| Petitioner, | * | |
| | * | Special Master Dorsey |
| v. | * | |
| | * | Fact Ruling; Sufficiency of Evidence; |
| SECRETARY OF HEALTH | * | Receipt of Vaccination; Influenza ("flu") |
| AND HUMAN SERVICES, | * | Vaccine; Guillain-Barré Syndrome ("GBS") |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

<u>Franklin John Caldwell, Jr.</u>, Maglio, Christopher & Toale, Sarasota, FL, for petitioner.
<u>Michael Patrick Milmoe</u>, U.S. Department of Justice, Washington, DC, for respondent.

## RULING REGARDING FINDINGS OF FACT[1]

### I.      Introduction

On November 3, 2008, John Gerard ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program[2] ("the Program") in which he alleges that a trivalent influenza ("flu") vaccination that he received in October or November 2005 caused him

---

[1] Because this ruling contains a reasoned explanation for the special master's action in this case, the special master intends to post it on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002).  All decisions and substantive rulings of the special masters will be made available to the public unless they contain trade secret or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would clearly be an unwarranted invasion of privacy.  When such a decision or designated substantive order is filed, a party has 14 days to identify and to move to redact such information before the document's disclosure.  Absent a timely motion, the decision shall be made available to the public in its entirety.  Upon the filing of a timely motion to redact, along with a proposed redacted version of the decision, if the special master, upon review, agrees that the identified material fits within the categories listed above, the special master shall redact such material from the ruling made available to the public.  42 U.S.C. § 300aa-12(d)(4); Vaccine Rule 18(b).

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act").  Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

to develop Guillain-Barré Syndrome ("GBS") on November 14, 2005.  See Petition ("Pet.") at 1.
In her report filed pursuant to Vaccine Rule 4(c), respondent noted that "no record of . . .
vaccination ha[d] been submitted," and that petitioner was "unable to locate any documentation
to substantiate the claim" that he received a flu vaccine in October or November 2005.
Respondent's Rule 4 Report ("Resp't's Rep't"), filed June 10, 2010, at 2.

Because nothing in the record documents the administration of a flu vaccine to petitioner
in October or November 2005, petitioner filed a motion for a finding that he received the
vaccine.  Petitioner's Renewed Motion for a Finding that Petitioner Received the Influenza
Vaccine on November 11, 2005, and Memorandum of Law Regarding Evidence of Vaccine
Receipt ("Pet'r's Mot."), filed Sept. 22, 2011.  Petitioner argues that "[t]he evidence… is
sufficient to conclude that it is more likely than not that [he] . . . received the flu vaccine on or
about November 11, 2005."  Id. at 10.

Upon consideration of the record as a whole, the undersigned finds that a preponderance
of the evidence does not support a finding that petitioner received an influenza vaccination prior
to the onset of his GBS on November 14, 2005.

## II.    Procedural Background

Petitioner was an employee at Eagle Ottawa Leather Company, LLC ("Eagle Ottawa") in
Grand Haven, Michigan, for thirty years.  Petitioner's Exhibit ("Pet'r's Ex.") 8 at 1 (petitioner's
affidavit).  He alleges that he received a flu vaccine at Eagle Ottawa on or about November 11,
2005, and developed GBS approximately three days later.  Id.

Petitioner filed his petition on November 3, 2008.  Pet. at 1.  In addition to medical
records and his own affidavit, petitioner filed an affidavit from his co-worker and friend, Mr.
Scott Perley.  Pet'r's Exs. 8 and 9.

Respondent filed her Report pursuant to Vaccine Rule 4(c) on June 10, 2010.  Resp't's
Report at 1.  Respondent asserted that petitioner did not provide sufficient evidence to support a
finding that he had received the flu vaccine in November 2005 that allegedly caused his GBS.
See id. at 13, 17.

On September 22, 2011, petitioner filed a motion for a finding on whether he received the
flu vaccine.  Pet'r's Renewed Motion for a Finding that Petitioner Received the Influenza
Vaccine on November 11, 2005, and Memorandum of Law Regarding Evidence of Vaccine
Receipt ("Pet'r's Mot.").  Petitioner asserted that the record was supported by his filing an
affidavit from Mr. Scott Landis, Vice President of Human Resources at Eagle Ottawa (Pet'r's
Ex. 14 at 1).  Id. at 1.  Respondent opposed petitioner's motion on the ground that the record was
insufficient to support a finding that petitioner received the flu vaccine, regardless of Mr.
Landis's affidavit.  Resp't's Opp'n to Pet'r's Renewed Mot. for a Factual Finding ("Resp't's
Opp'n"), filed Oct. 24, 2011, at 2.

After discussing the parties' respective briefs during a status conference, the special
master previously assigned to the case determined that the record remained insufficient to rule on

petitioner's motion.  See Order, filed Jan. 13, 2012, at 2.  Accordingly, the special master "concluded that it [wa]s reasonable and necessary to inquire further into the nature of . . . [Eagle Ottawa] records and potential information that [Eagle Ottawa] . . . may possess."  Id. (citing § 300aa-12(d)(3)(B)).

Pursuant to the previous special master's ensuing orders, petitioner submitted additional records from Eagle Ottawa.  See Court Ex. 1000.  Petitioner also submitted responses to questions the previous special master posed to Mr. Robert "Bob" Tovey, the person who administered flu vaccines to Eagle Ottawa employees in 2005, see Court Ex. 1002 at 1, and Ms. Debra Parrish, a customer service representative for the company that "provided support for Mr. Tovey in obtaining influenza vaccinations" in 2005.  Court Ex. 1004 at 1.

A fact hearing was held on May 21, 2013, before the previous special master.  Transcript ("Tr.") 1.  Petitioner and Mr. Perley testified at the hearing.  See Tr. 2.

The matter is now ripe for adjudication.  The pertinent evidence concerning whether the record supports a finding, by a preponderance of the evidence, that petitioner received a flu vaccine before his GBS manifested on November 14, 2005, is set forth and discussed in sections III and V below.

### III.    Summary of the Evidence

The undersigned has considered the entirety of the record.  § 300aa-13(a)(1).  See Paterek v. Sec'y of Health & Human Servs., 527 Fed. App'x 875, 884 (Fed. Cir. 2013) (stating that "[f]inding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered"); see also Veryzer v. Sec'y of Health & Human Servs., 98 Fed. Cl. 214, 223 (2011) (noting that special masters are bound by both § 300aa-13(b)(1) and Vaccine Rule 8(b)(1) to consider only evidence that is both "relevant" and "reliable").  The evidence includes (1) petitioner's medical records; (2) petitioner's affidavit and testimony; (3) Mr. Tovey's affidavit[3]; (4) Eagle Ottawa records; and (5) Mr. Perley's affidavit and testimony. These sources of evidence are discussed in turn.

#### A.  Petitioner's medical records

On the afternoon of November 14, 2005, petitioner "began experiencing tingling in his legs and upper chest which then spread to his arms."  Pet. at 1.  These symptoms progressed up petitioner's left and right sides, and he began experiencing problems with walking and balance. Pet'r's Ex. 1 at 182.  He presented to the Ludington emergency room and was transferred to Mercy Health Partners ("Mercy") in Muskegon, Michigan, on November 15, 2005.  Id.

---

[3] Mr. Tovey submitted sworn responses to the previous special master's questions.  Court Ex. 1002.  As the previous special master indicated, Mr. Tovey's responses would be considered sworn testimony provided under oath.  See Questions for Mr. Bob Tovey, filed Dec. 19, 2012, at 2.  Accordingly, the undersigned considers Mr. Tovey's responses to constitute an affidavit and will refer to them as such.

In petitioner's admission profile at Mercy on November 15, 2005, Jacklyn Burr, R.N., recorded, among other things, that petitioner's seasonal flu vaccine was not current.  Nurse Burr's documentation is copied below:

| Adult Immunization | |
|---|---|
| Seasonal Flu Vaccine Current | No |
| Pnuemovax Within Last Five Years | No |
| Hepatitis B Vaccine. | No |
| Diphtheria/Tetanus Immunization | Yes |
| Date of Diphtheria/Tetanus Vaccine | 1991 |

Pet'r's Ex. 11 at 801.

Nurse Burr then documented that she performed an assessment as to whether petitioner was eligible to receive the flu vaccine.  Id.  She charted that the flu vaccine was contraindicated for petitioner because he had an acute febrile illness.  Id.  Nurse Burr documented that petitioner "may be vaccinated after symptoms have abated."  Id.  Nurse Burr instructed petitioner "to talk with [his] physician after discharge to obtain the vaccine if not administered during hospitalization."  Id.

| Assessment for Influenza Immunization | |
|---|---|
| Seasonal Flu Vaccine Absolute Contra | Has an acute febrile illness (may be vaccinated after symptoms have abated) |
| Seasonal Flu Vacc–Eligible/Agrees | No |
| Seasonal Flu Vaccine Follow-up | Patient instructed to talk with physician after discharge to obtain the vaccine if not administered during hospitalization |

Pet'r's Ex. 11 at 801.

Nurse Burr also recorded the influenza virus vaccine under "allergies," which were reviewed with petitioner.  Pet'r's Ex. 11 at 866.  She documented GBS as a "reaction" to the influenza virus vaccine.  Id.; see also Pet'r's Ex. 11 at 49.[4]

On November 15, 2005, Dr. Joan Nagelkirk, petitioner's admitting physician, recorded that petitioner "has not had flue [sic] or pneumococcal vaccinations."  Dr. Nagelkirk's documentation of November 15, 2005, is copied below:

IMMUNIZATIONS:  The patient  has not had flue or pneumococcal vaccinations.

Pet'r's Ex. 11 at 707.

---

[4] Nurse Burr's documentation that petitioner had not received the flu vaccine and then her subsequent entry that petitioner had a reaction to the vaccine appears self-contradictory.  The contradiction may be explained by Nurse Burr's entry stating that the flu vaccine was contraindicated.  Nurse Burr may have documented that petitioner had a "reaction" and an "allergy" to the flu vaccine because the vaccine was contraindicated due to petitioner's GBS.  See Pet'r's Ex. 11 at 143 (flu vaccine absolutely contraindicated in November 2006 because of petitioner's history of GBS).

Dr. Nagelkirk subsequently ordered a flu vaccine for petitioner "[i]f appropriate per protocol." Pet'r's Ex. 11 at 719.[5]

Petitioner was transferred to Mercy's acute rehabilitation facility on November 21, 2005, for continued treatment. Pet'r's Ex. 11 at 165-67. An admission profile was performed by Connie Katafias, R.N., on November 21, 2005. Id. at 386. The assessment form indicates that Nurse Katafias asked petitioner if his seasonal flu vaccine was current. Id. Nurse Katafias documented "No," indicating that petitioner had not received the seasonal flu vaccine in November 2005. Nurse Katafias's documentation is copied below:

| Adult Immunization | |
| --- | --- |
| Seasonal Flu Vaccine Current | No |
| Pnuemovax Within Last Five Years | No |
| Date of Diphtheria/Tetanus Vaccine | 1991 |

Pet'r's Ex. 11 at 387.

On November 21, 2005, Dr. Anthony Wilson recorded that petitioner "meets criteria and has agreed to [flu] vaccination." Pet'r's Ex. 11 at 239. Dr. Wilson then ordered a flu vaccine for petitioner. Dr. Wilson's order is set forth below:

11/21/2005 8:13:28 PM EST: This patient meets criteria and has agreed to vaccination. Pharmacist, please place order for Influenza Vaccination on this patient as appropriate.

Pet'r's Ex. 11 at 239.

Mr. Joseph Graftema, Pharm.D., verified Dr. Wilson's order for the influenza vaccine on November 21, 2005. Pet'r's Ex. 11 at 240. However, the order was later voided.[6] Pet'r's Ex. 11 at 240; see also Pet'r's Ex. 11 at 702 ("Reaction status: Active; Reactions: guillian barre syndrome").

On January 4, 2006, petitioner presented to his primary care physician, Dr. Koryn Van Ittersum, for follow-up of his GBS. Dr. Ittersum's note from that visit states "no etiology was identified for the Guillain-Barre Syndrome, which has been quite frustrating to the patient." Pet'r's Ex. 1 at 65. In a letter dated January 8, 2006, Dr. Ittersum wrote that "[petitioner] has questions about the cause of his illness." Id. at 162. Dr. Ittersum's records do not contain any reference to any flu vaccine received by petitioner in the fall of 2005.

---

[5] The order, however, was later voided by Donna Eppler, Pharm.D. Id.; see also Pet'r's Ex. 11 at 876. Presumably, Dr. Nagelkirk's order was voided because petitioner did not fit within the vaccine protocol or the vaccination was contraindicated due to petitioner's GBS. See supra, page 4.
[6] Mr. Joseph Graftema, Pharm.D., voided Dr. Wilson's order on November 22, 2005. Pet'r's Ex. 11 at 240. Presumably, Wilson's order was voided because petitioner did not fit within the vaccine protocol or the vaccination was contraindicated due to petitioner's GBS. See supra, page 4.

On April 28, 2006, petitioner presented to the emergency department at Mercy with complaints of lower back pain.  Pet'r's Ex. 11 at 211.  Dr. Thomas J. Zyniewicz confirmed petitioner's past history of GBS.  Pet'r's Ex. 11 at 215.  Dr. Zyniewicz also documented that petitioner was allergic to insulin and the "flu virus vaccine."  Id.  The nursing assessment form completed by Nancy L. O'Brien, R.N., also documented that petitioner was allergic to the influenza virus vaccine, noting "Reaction, gullian barre syndrome."  Pet'r's Ex. 11 at 211; but see Pet'r's Ex. 2 at 49 (Dr. Ivan Landan noting on January 23, 2006, that petitioner had no allergies).

Petitioner was admitted to Mercy Health on November 4, 2006, for a lumbar discectomy.  Pet'r's Ex. 11 at 130.  The adult admission profile was performed by Michelle M. Perk, R.N.  Id. at 143.  Nurse Perk performed an assessment for the influenza immunization.  Id. at 143.  She documented that the flu vaccine was contraindicated for petitioner due to his history of GBS.  Nurse Perk's documentation is as follows:

**Assessment for Influenza Immunization**

| Seasonal Flu Risk | None of the above.  STOP, patient is NOT at high risk; DO NOT immunize |
| Seasonal Flu Vaccine Absolute Contra | Has a history of Guillain–Barre' Syndrome |
| Seasonal Flu Vacc–Eligible/Agrees | No |

Pet'r's Ex. 11 at 143.

### B.  Petitioner's affidavit and testimony

In his affidavit, petitioner stated that Mr. Tovey administered a flu vaccine to him on November 11, 2005.  Pet'r's Ex. 8 at 1.  Petitioner stated that he paid $5.00 for the vaccination and that Mr. Tovey handled the payment.  Pet'r's Ex. 8; Tr. 7.[7]  Petitioner testified that he declined a receipt for the payment.  Tr. 7.

Petitioner testified that he had received a flu vaccine at Eagle Ottawa every year (except for 2004, when they were unavailable) for approximately 15-20 years.  Pet'r's Ex. 8 at 1; Tr. 9.  He testified that he had never signed a consent form to receive a flu vaccine, Tr. 9, and that Eagle Ottawa had "no record that [he] . . . ever received a flu shot."  Pet'r's Ex. 8 at 1.  According to petitioner, "there was never any waiver for G.B.S. until after [he] . . . was hospitalized with [GBS]."  Id.; Tr. 39.  Thereafter, petitioner claims that Eagle Ottawa "[m]anagement posted . . . a notice that any employees wishing to get a flu shot will have to sign a waiver for G.B.S."  Id.

### C.  Mr. Tovey's affidavit

Mr. Tovey was responsible for administering flu vaccines to Eagle Ottawa employees in November 2005.  Court Ex. 1002 at 1.  Mr. Tovey was unable to verify that he had administered a flu vaccine to petitioner in November 2005.  See Court Ex. 1002 at 6.

Mr. Tovey stated that "flu shots were available at Eagle Ottawa beginning Monday, November 21, 2005."  Court Ex. 1002 at 1.  Mr. Tovey stated that "[t]he [flu] vaccine was made

---

[7] The transcript spells Mr. Tovey's name as "Tovi."  See, e.g., Tr. 6.

available to the [Eagle Ottawa] employees [on] November 21, 2005"). Id. at 4.[8] "Eagle Ottawa employees who requested the [flu] vaccination were asked to complete a consent form." Id. at 3; see also id. at 2 ("The influenza vaccination consent form would have been filed in the non-workers compensation employee file"); id. at 5 ("all employees, as a standard procedure, complete a consent form."). Mr. Tovey stated that he "did not handle any payment for the [flu] vaccines," Court Ex. 1002 at 4, because "[human resources] managed the collection of the fee [for the vaccine]." Id. at 6.

### D. Eagle Ottawa Records

A number of records from Eagle Ottawa speak to whether petitioner received a flu vaccine on November 11, 2005. Although petitioner testified that he never signed a consent form or "waiver" to receive a flu vaccination, consent forms bearing his name and signature were produced for the years 2002 and 2003. See Pet'r's Ex. 3 at 39-40. Among other things, these forms provided that petitioner "voluntarily request[ed] the [flu] vaccine be provided to [him] at Eagle Ottawa" and "release[d] Eagle Ottawa . . . from any and all claims or liability in any way related to this voluntary flu vaccination program." Id. at 39, 40.

Eagle Ottawa purchased the flu vaccines that Mr. Tovey administered in November 2005 from a company named MED-1. See Court Ex. 1002 at 1. MED-1 generated an invoice for the purchase dated November 17, 2005. See Court Ex. 1004 at 8. Mr. Tovey explained that the invoice memorialized the purchase of 40 flu vaccines, Court Ex. 1002 at 5, which became available on November 21, 2005. Id. at 1; see also id. at 8 (MED-1 invoice dated November 17, 2005). An Eagle Ottawa posting[9] that stated 40 "flu shots" were available beginning November 21, 2005, corroborates this aspect of Mr. Tovey's testimony. Court Ex. 1001 at 31.

### E. Mr. Perley's affidavit and testimony

Mr. Perley, a friend and co-worker of petitioner, submitted an affidavit and testified on petitioner's behalf at the hearing. Pet'r's Ex. 9 at 1; Tr. 24. Mr. Perley stated that Eagle Ottawa had provided annual flu shots for all employees "for the past 15 years." Pet'r's Ex. 9 at 1; see also Tr. 25, 28. He stated that Eagle Ottawa previously provided flu vaccines free of charge, but the company began charging $5.00 for the vaccines in 2005. Pet'r's Ex. 9 at 1; Tr. 25.

Mr. Perley stated that he "was present when [petitioner] . . . received his flu shot given by Bob Tovey who was the Eagle Ottawa Nurse." Pet'r's Ex. 9 at 1; see also Tr. 25. According to Mr. Perley, petitioner paid Mr. Tovey the $5.00 fee in cash, Tr. 28, and petitioner declined a receipt when Mr. Tovey offered to produce one. Tr. 25-26.

---

[8] November 21, 2005, is one week after the onset of petitioner's GBS on November 14, 2005. Petitioner was in Mercy's acute rehabilitation facility on November 21, 2005. He was not at Eagle Ottawa on November 21, 2005.

[9] Mr. Tovey circulated the posting to various Eagle Ottawa employees via email on November 21, 2005, and asked them to "post in [their] . . . department[s]." Court Ex. 1000 at 12. The posting stated "FLU SHOTS ARE AVAILABLE . . . $10.00." Id. at 13.

Mr. Perley did not, however, know the date on which petitioner allegedly received the flu vaccine.  See Pet'r's Ex. 9 at 1; Tr. 36.  He suggested that he learned the date when discussing it with petitioner the day before the hearing, but otherwise he only had "an idea of when it was." Tr. 36.

Mr. Perley testified that he did not recall whether petitioner signed a consent form prior to receiving the flu vaccine.  Tr. 28.  Mr. Perley testified that he did not sign a consent form for the flu vaccine that he received in 2005, and that Eagle Ottawa employees had never been required to sign anything prior to receiving a flu vaccine at Eagle Ottawa.  Tr. 28, Tr. 39. Further, Mr. Perley stated that "[a]fter [petitioner] was diagnosed with [GBS] . . . Eagle Ottawa posted a waiver for each employee to sign who was going to get the flu shot because of Guillain-Barre Syndrome."  Pet'r's Ex. 9 at 1.

## IV.    Applicable Legal Standards

Under the Vaccine Act, petitioner must first prove by a preponderance of the evidence that he "received a vaccine set forth in the Vaccine Injury Table." § 300aa-11(c)(1)(A).  The preponderance of the evidence standard means a fact is more likely than not.  Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010).

Although contemporaneous documentation of vaccination from a health care provider is the best evidence, its production is not an absolute requirement.  See Centmehaiey v. Sec'y of Health & Human Servs., 32 Fed. Cl. 612, 621 (1995) ("The lack of contemporaneous, documentary proof of a vaccination . . . does not necessarily bar recovery.").  Thus, special masters have found in favor of vaccine administration where contemporaneous documentation of vaccination is unavailable when other forms of evidence have provided preponderant evidence of vaccination administration.  For example, corroborative, though retrospective, medical notations have been found to provide preponderant evidence of vaccine administration.  See Lamberti v. Sec'y of Health & Human Servs., No. 99-507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May, 31, 2007) (finding multiple medical record references to vaccine receipt constituted preponderant evidence of administration); Groth v. Sec'y of Health & Human Servs., No. 00-287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006) (finding a treating physician's note "4/30/97-Hep B. inj. # 1 (not given here) ([patient] wanted this to be charted)" to be sufficient proof of vaccination); Wonish v. Sec'y of Health & Human Servs., No. 90-667V, 1991 WL 83959, at *4 (Cl. Ct. Spec. Mstr. May 6, 1991) (finding parental testimony "corroborated strongly by medical records [referring] back to the [vaccination]" to be sufficient to establish vaccine administration).

Testimony alone has also been found to provide preponderant evidence of vaccine administration.  Alger v. Sec'y of Health & Human Servs., No. 89-31V, 1990 WL 293408, at *7 (Cl. Ct. Spec. Mstr. Mar. 14, 1990).   In Alger, the special master found the oral testimony alone "more than adequate to support a finding that the vaccine was administered to [petitioner]."  Id. at *7.

Medical records "warrant consideration as trustworthy evidence."  Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).  Accordingly, where later-given

testimony conflicts with medical records created closer in time to the events in question, special masters frequently accord more weight to the medical records.  See, e.g., Reusser v. Sec'y of Health & Human Servs., 28 Fed. Cl. 516, 523 (1993) ("[W]ritten documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later.").

## V.    Determination

The undersigned has considered the entire record.  § 300aa-13(a)(1).  Petitioner has failed to provide preponderant evidence that he received a flu vaccine before the onset of his GBS on November 14, 2005.  An evaluation of the evidence that informs this conclusion follows.

### A.  Medical records

Petitioner's medical records provide the most persuasive evidence that he did not receive a flu vaccination prior to the onset of his GBS on November 14, 2005.  None of petitioner's medical records documents that he received a flu vaccination at any time in November 2005. From November 15, 2005 through November 21, 2005, four different health care providers documented that petitioner had not received a flu vaccine prior to his emergency room admission on November 14, 2005.  On the admission profile dated November 15, 2005, Nurse Burr documented that petitioner had not received the flu vaccine.  Pet'r's Ex. 11 at 801.  Likewise, Dr. Nagelkirk recorded on November 15, 2005, that petitioner had not received the seasonal flu vaccine.  Pet'r's Ex. 11 at 707.  Because petitioner had not received the vaccine, Dr. Nagelkirk subsequently ordered that petitioner be given the vaccine if appropriate per the hospital's protocol.  Pet'r's Ex. 11 at 719.  Common sense dictates that Dr. Nagelkirk would not have ordered the flu vaccine on November 15, 2005, if petitioner had already received it earlier. Likewise, it is reasonable to infer that petitioner did not receive the flu vaccine during his hospitalization in November 2005 because it was contraindicated due to his GBS.  See Pet'r's Ex. 11 at 801 (flu vaccine contraindicated for petitioner on November 15, 2005 due to his "acute febrile illness"); see also Pet'r's Ex. 11 at 143 (flu vaccine contraindicated for petitioner in November 2006 due to his history of GBS).

On the admission profile dated November 21, 2005, Nurse Katafias documented that petitioner had not received the seasonal flu vaccine, Pet'r's Ex. 11 at 387, but that he was eligible and agreed to receive one.  Id. at 388.  Dr. Wilson ordered that petitioner receive the flu vaccine after obtaining petitioner's consent.  Pet'r's Ex. 11 at 239-40.  Again, it is unlikely that Dr. Wilson would have ordered the flu vaccine if petitioner had already received it.  In summary, two registered nurses and two physicians made consistent entries in the medical records establishing that petitioner had not received the flu vaccine prior to his November 14, 2005 hospitalization for GBS.

### B.  Inconsistent Testimony

Petitioner's testimony was not consistent with what else is known about Eagle Ottawa's flu vaccination program.  Mr. Perley's testimony was similarly inconsistent.  These weaknesses diminish the weight of petitioner's and Mr. Perley's testimony.  Examples include (1) the

payment and cost of the flu vaccine; (2) the date on which flu vaccines were available at Eagle Ottawa in November 2005; and (3) Eagle Ottawa's consent forms.

1.      Payment and cost of the flu vaccine

Petitioner testified that he paid Mr. Tovey $5.00 in cash for a flu vaccine that Mr. Tovey administered on November 11, 2005.  Mr. Perley also testified that he (and all Eagle Ottawa employees) paid $5.00 for a the flu vaccine in November 2005.  Mr. Tovey did not testify as to the cost of the vaccines, but the posting he circulated on November 21, 2005, established that each flu vaccine cost $10.00.

Petitioner and Mr. Perley testified that Mr. Tovey handled the payment for petitioner's flu vaccine in November 2005.  Mr. Tovey, however, stated that he never handled any payments for the vaccines.  According to Mr. Tovey, Eagle Ottawa human resources handled the payments.

2.      Date on which flu vaccines were available at Eagle Ottawa in November 2005

Petitioner alleges he received a flu vaccine at Eagle Ottawa on November 11, 2005.  The weight of the evidence, however, indicates that flu vaccines were not available at Eagle Ottawa until November 21, 2005.  Mr. Tovey unequivocally stated that the flu vaccines were not available until November 21, 2005.  The invoice generated by MED-1 dated November 17, 2005, and the Eagle Ottawa posting Mr. Tovey circulated on November 21, 2005, which stated that flu vaccines were available, corroborate Mr. Tovey's testimony.

3.      Eagle Ottawa's consent forms

Petitioner and Mr. Perley testified that Eagle Ottawa employees were never required to sign a consent form prior to receiving a flu vaccine at Eagle Ottawa.  Eagle Ottawa, however, produced consent forms for flu vaccines from 2002 and 2003 bearing petitioner's name and signature.  Although none was found for 2005, Mr. Tovey testified that it was standard procedure for all Eagle Ottawa employees to sign a consent form to receive a flu vaccine.  Moreover, the fact that petitioner testified that he had never signed a consent form, when such forms with his name and signature were produced for 2002 and 2003, calls into question the accuracy of petitioner's testimony.

4.      Mr. Perley's testimony

Mr. Perley testified that he was present when petitioner received his alleged flu vaccine.  Mr. Perley could not, however, recall the date on which this occurred.  He testified that he was unsure of the date, and suggested at the hearing that he only knew the approximate date because he discussed it with petitioner the day before the hearing.

As mentioned, Mr. Perley testified that Eagle Ottawa employees were not required to sign a consent form to receive a flu vaccine, that the vaccines cost $5.00 each, and that Mr.

Tovey collected the payment.  As discussed, other evidence indicates that this information is incorrect, which calls into question the accuracy of Mr. Perley's recollection and testimony.

**VI.     Conclusion**

The undersigned finds that petitioner has not provided preponderant evidence that he received a flu vaccine prior to the onset of his GBS on November 14, 2005.  A status conference will be scheduled to discuss further proceedings.

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Special Master